WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kim Houston, | No. CV-12-02096-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Commissioner of Social Security, | |
| Defendant. | |

Kim Houston (Plaintiff) seeks judicial review of the final decision of the Commissioner of Social Security (the Commissioner), denying his application for disability insurance benefits and supplemental security income benefits under the Social Security Act.  The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Local Rule of Civil Procedure 16.1.   For the following reasons, the Court affirms the Commissioner's decision.

## I.      Procedural Background

In June 2009, Plaintiff applied for disability insurance benefits, 42 U.S.C. § 401-34, and supplemental security income, 42 U.S.C. § 1381-83c, under Titles II and XVI of the Social Security Act (the Act).  (Tr. 129-39.)[1]  Plaintiff alleged that he had been disabled since June 2009, due to lower back pain, diabetes, and a heart attack.  (Tr. 144.)

---

[1]  Citations to "Tr." are to the certified administrative transcript of record located at docket 12.

After the Social Security Administration (SSA) denied Plaintiff's initial application and his request for reconsideration, he requested a hearing before an administrative law judge (ALJ).  (Tr. 63-74, 90-91.)  After conducting a hearing, the ALJ issued a decision finding Plaintiff not disabled under the Act.  (Tr. 15-25.)  This decision became the final decision of the Commissioner when the Social Security Administration Appeals Council denied Plaintiff's request for review.  (Tr. 1-3); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council.)   Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

**II.    Medical Record**

The record before the Court establishes the following history of diagnosis and treatment.

**A.    Enrique Cifuentes, M.D.**

Plaintiff received regular treatment from Dr. Cifuentes at Gila Internal Medicine Office (Gila) from January 2009 through 2011.  (Tr. 220-38, 287-293, 308-23.)  Although the signatures on most of the treatment notes are illegible, the parties do not dispute that Dr. Cifuentes provided the treatment described in the Gila records.  The record reflects that Dr. Cifuentes treated Plaintiff for various complaints, including hypertension, lower back pain, and diabetes.   (Tr. 221-38, 308-21.)   Plaintiff was prescribed various medications including Oxycodone (Tr. 227, 228, 232, 234), Flexeril (Tr. 230), and Percocet.  (Tr.  224, 226, 271, 375, 377, 387, 394, 430.)  Examinations generally showed that Plaintiff had normal reflexes, normal gait, and no edema, but that he also had some numbness and parethesias.   (Tr.  221-38,  308-21.)    Dr. Cifuentes consistently recommended "diet" and "exercise."  (Tr. 222, 224, 232, 234, 236, 309, 311, 313.)

In January 2010, Dr. Cifuentes completed a physical capacities assessment and a residual functional capacity (RFC) assessment.  (Tr. 277-79, 280-81.)  He opined that Plaintiff could not perform even sedentary work.  (Tr. 277-79.)  Dr. Cifuentes opined that Plaintiff could lift less than ten pounds, could stand or walk less than two hours in an eight-hour workday, and could sit two hours in an eight-hour workday.  (Tr. 277.)  He

1    also opined that Plaintiff could never climb, stoop, kneel, or crouch, and could only

2    occasionally reach.  (Tr. 279.)

3         Dr. Cifuentes explained that these limitations were a result of "lumbalgia [low

4    back pain], lumbosacral neuritis, lumbosacral spondylosis, [and] annular bulges  [at] L4-5

5    and L5-S1."  (Tr. 277.)  Dr. Cifuentes found that Plaintiff suffered from "chronic back

6    pain [with] radiculopathy, arthralgias, decreased range of motion, [and] vertigal dizziness

7    due to medications."  (Tr. 279.)  In addition, Dr. Cifuentes assessed severe pain, defined

8    as "[e]xtremely impaired due to pain which precludes ability to function" (Tr. 280), that

9    frequently interfered with attention and concentration, and lead to the failure to complete

10   tasks in a timely manner.  (Tr. 281.)

11        In January 2011, Dr. Cifuentes completed another physical capacities assessment

12   and RFC assessment.  (Tr. 372-74, 370-71.)  Dr. Cifuntes indicated that Plaintiff had

13   severe pain.  (Tr. 370.)  He found that Plaintiff could occasionally carry ten pounds,

14   frequently carry less than ten pounds, stand less than two hours in an eight-hour workday,

15   and sit for six hours in an eight-hour work day.  (Tr. 372.)  He further found that Plaintiff

16   could never climb, balance, stoop, kneel, crouch, or crawl.  (Tr. 373.)  He opined that

17   Plaintiff could not perform fine manipulation or "feel," but could occasionally handle and

18   reach.  (Tr. 373.)

19        **B.    Minesh Zaveri, M.D.**

20        On referral from Dr. Cifuentes, Dr. Zaveri treated Plaintiff at Sonoran Pain

21   Management.  (Tr. 224, 253-73, 375-437.)  Examinations documented that Plaintiff had

22   some positive straight leg raising tests, tenderness in the lumbar spine, antalgic gait, and

23   normal strength, reflexes, and senses.  (Tr. 257, 263, 270, 329, 376, 386, 393, 409, 417,

24   423, 434.)  Plaintiff had several epidural steroid injections beginning in October 2009.

25   (Tr. 254-72, 375-436.)  He also had lumbar facet injections (Tr. 272), lumbar medical

26   nerve branch blocks (Tr. 436, 431), and lumbar nerve radiofrequency ablation.  (Tr. 381,

27   419, 425, 438.)  He initially reported some resolution of his low back pain.  (Tr. 256,

28   262.)  Plaintiff subsequently reported more significant resolution of his pain.  (Tr. 375,

385, 416, 422, 428, 433.)   Later examinations reflected that Plaintiff no longer had positive straight leg raising tests.  (Tr. 376, 378, 386, 393, 400, 409.)   On Dr. Zaveri's recommendation, Plaintiff attended physical therapy from January through March 2010. (Tr. 324-63.)   At discharge, Plaintiff's therapist opined that his progress had "plateaued" and that his prognosis was fair.  (Tr. 324.)

**C.     Elizabeth Ottney, D.O.**

In September 2009, the state agency referred Plaintiff to Dr. Ottney for a consultative examination.  (Tr. 214-16.)  Although Dr. Ottney ordered an x-ray as part of the consultative examination, she conducted the examination without the films because they were not available on the date of Plaintiff's appointment.  (Tr. 215 (noting that the lumbosacral spine films [are] unavailable for my review today").)

During that examination, Plaintiff reported that he had low back pain that had started one year earlier with no precipitating injury.  (Tr. 214.)  Plaintiff stated that an MRI showed that he had two bulging disk in his back.  (*Id.*)  Plaintiff reported that his back pain was "better" with medication.  (*Id.*)  During the examination, Plaintiff reported fatigue, dizziness, shortness of breath, and a racing heart.  (Tr. 215.)  On examination, Dr. Ottney found that Plaintiff had no edema, normal strength in his upper and lower extremities, normal balance, normal coordination, the ability to walk without a cane, and normal straight leg raising tests.  (Tr. 215.)  Plaintiff could heel and toe walk, tandem walk, and squat.  (*Id.*)  Plaintiff's range of motion in his joints was normal except his lumbar flexion was limited to thirty degrees.  (*Id*).  Dr. Ottney opined that Plaintiff was not limited in his ability to "sit, hear, see, speak, finger, grasp or reach."  (Tr. 215.)  She found that Plaintiff did not appear limited in his ability to stoop or crouch, but "may have difficulty with repetitively climbing ladders and scaffolding as well as crawling secondary to a small knee effusion."  (Tr. 216.)  She also opined that Plaintiff could lift ten pounds frequently and twenty pounds occasionally.  (Tr. 216.)

/ / /

/ / /

### D.   Christopher Maloney, M.D.

On November 4, 2009, Dr. Maloney, a state agency physician, completed a physical RFC assessment based on his review of the medical record.  (Tr. 239-46.) Dr. Maloney found that Plaintiff could occasionally lift/carry twenty pounds and could frequently lift/carry ten pounds.  (Tr. 240.)  He also found that Plaintiff could stand/walk and sit for about six hours in an eight-hour workday.  (*Id.*)  He further found that Plaintiff could frequently balance, stoop, kneel, and crouch, and could occasionally climb ramps/stairs and crawl.  (Tr. 241.)  He found that Plaintiff had no "manipulative limitations."  (Tr. 242.)

### E.   James Green, M.D

In March 2010, Dr. Green, a state agency physician, reviewed the medical record, including the opinions of Dr. Ottney and Dr. Cifuentes, and assessed Plaintiff's physical RFC.  (Tr. 294-301.)  Dr. Green found that Dr. Cifuentes's opinion that Plaintiff had a "less-than-sedentary" RFC and was nearly "bedridden" was not supported by the objective medical evidence or the functional data in the file and was not projected to last twelve months.  (Tr. 300.)  Dr. Green found that Plaintiff could occasionally lift/carry twenty pounds and could frequently lift/carry ten pounds.  (Tr. 295.)  He found that Plaintiff could stand/walk and sit six hours in an eight-hour workday.  (*Id.*)  He further found that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (Tr. 296.)  He found that Plaintiff had no "manipulative limitations." (Tr. 297.)  In support of his findings, Dr. Green stated that, although Plaintiff complained of pain, he had "excellent progress" from local injections and was "projected to light work."  (Tr. 295.)  He also noted that Plaintiff was able to drive, shop, and take his kids to school.  (Tr. 299.)

### III.   Administrative Hearing Testimony

Plaintiff was in his forties at the time of the administrative hearing.  (Tr. 23, 37.) He had an eleventh grade education and a general equivalency diploma.  (Tr. 39.) Plaintiff's past relevant work included heavy truck driver.  (Tr. 51, 145.)  Plaintiff

1   testified at the administrative hearing that he was unable to work because of ongoing low

2   back pain due to "three bulging discs."  (Tr. 42.)  He stated that interventions such as

3   injections and radiofrequency ablation helped relieved his pain for a few days, and "then

4   it's back to where it was."  (Tr. 44.)  Plaintiff testified that during a typical eight-hour day

5   he spent six hours lying in bed sleeping or watching television.  (Tr. 44-45, 49.)  Plaintiff

6   testified that he could stand for one hour and sit for forty minutes.  (Tr. 44.)  He also

7   testified that he experienced numbness and weakness in his hands.  (Tr. 47.)

8        Vocational expert Nathan Dean, M.Ed. also testified at the administrative hearing.

9   He classified Plaintiff's past work as semi-skilled and skilled work performed at the

10  medium exertional level.  (Tr. 51.)  The vocational expert responded to a hypothetical

11  question from ALJ.  The ALJ asked the vocational expert to assume:

12        [S]o if we had someone … able to do light exertional level
          work … [a]nd the job would be unskilled. There'd be postural
13        restrictions, so there'd be no crawling or crouching or
          climbing or squatting or kneeling. And lower extremity
14        limitations, so there'd be no use of the legs or feet for pushing
          or pulling foot or leg controls.[2]  (Tr. 51-52.)
15

16        The vocational expert responded that a person with those limitations could

17  perform work as a small product assembler, photocopy machine operator, and packing

18  line worker.  (Tr. 52, 24.)  The vocational expert further testified that a person with the

19  limitations that Dr. Cifuentes assessed would be unable to sustain any work.  (Tr. 53-54.)

20  The vocational expert also testified that the limitations to which Plaintiff testified would

21  preclude any sustained work.  (Tr. 53.)

22  **IV.   The ALJ's Decision**

23        A claimant is considered disabled under the Social Security Act if he is unable "to

24  engage in any substantial gainful activity by reason of any medically determinable

25

26        [2]   Plaintiff asserts that the ALJ, Ronald C. Dickinson, has used "substantially
    similar hypothetical questions" in other cases when he has issued an unfavorable
27  decision.  (Doc. 17 at 14, Appendix.)  Because the hypothetical reflected limitations that
    were supported by the record, *see* Section VI(D) *infra*, the similarity between the
28  hypothetical in this case and those used in other cases does not impact the Court's
    resolution of any issues in this case.

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income disability insurance benefits). To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that he is not presently engaged in a substantial gainful activity, and (2) that his disability is severe. 20 C.F.R. § 404.1520(a) (c). If a claimant meets steps one and two, he may be found disabled in two ways at steps three and four. At step three, he may prove that his impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is presumptively disabled. If not, the ALJ proceeds to step four. At step four, a claimant must prove that his RFC precludes him from performing his past work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education. If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. (Tr. 17.) At step two, the ALJ found that Plaintiff had the following severe impairments, "degenerative disc disease of the lumbar spine, radiculopathy in the lower extremities bilaterally, neuritis, spondylosis, peripheral neuropathy in the upper extremities bilaterally, bilateral carpal tunnel syndrome, [and] diabetes mellitus type II." (*Id*.) The ALJ also listed coronary artery disease and past heart attacks (before the disability onset date) among Plaintiff's severe impairments. (Tr. 18.) At the third step, the ALJ found

that the severity of Plaintiff's impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*.)  At step four, the ALJ concluded that Plaintiff retained "the residual functional capacity to perform light, unskilled work with no crawling, climbing, squatting, kneeling, and no use of the lower extremities for pushing or pulling."  (*Id*.)

The ALJ concluded that Plaintiff could not perform his past relevant work (Tr. 23.)  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, he could perform other "jobs that exist in significant numbers in the national economy."  (*Id*)  The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  (Tr. 24.)

**V.      Standard of Review**

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The district court reviews the Commissioner's final decision under the substantial evidence standard and must affirm the Commissioner's decision if it is supported by substantial evidence and it is free from legal error.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin*., 528 F.3d 1194, 1198 (9th Cir. 2008).

Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  In determining whether substantial evidence supports a decision, the court considers the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining

credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion."  *Batson v. Comm'r of* Soc. *Sec. Admin*., 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

## VI.   Discussion of Plaintiff's Claims

Plaintiff asserts that the ALJ erred by (1) rejecting the assessment of treating physician Enrique Cifuentes, M.D., (2) relying on the opinions of state agency examining physician Elizabeth Ottney, D.O. and the state agency reviewing physicians, (3) "determining [Plaintiff's] work capacities without support by substantial evidence in the record," and (4) rejecting Plaintiff's symptom testimony without providing clear and convincing reasons for doing so.  (Doc.  15 at 1-2.)  Plaintiff asks the Court to remand his case for a determination of disability benefits.  (*Id.*)  In response, the Commissioner argues that the ALJ's decision is free from legal error and is supported by substantial evidence in the record.  (Doc. 18.)

### A.   Weight Assigned to Medical Source Opinions

In weighing medical source evidence, the Ninth Circuit distinguishes between three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight is given to a treating physician's opinion.  *Id.*  The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion.  *Id.*; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than treating or examining physicians.  *Lester*, 81 F.3d at 831.  Although an ALJ generally

gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).   When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion . . . ."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

### B.   Weight Assigned Dr. Cifuentes's Assessment

The ALJ assigned "no evidentiary weight" to Dr. Cifuentes's January 27, 2010 assessment and his determination that Plaintiff had a "less than a sedentary residual functional capacity."  (Tr. 21-22.)  The ALJ explained that "Dr. Cifuentes's own clinical records do not support his own conclusions or his assessment nor are his conclusions supported by any credible treating or examining physician."  (Tr. 21.)  The ALJ also stated that Dr. Cifuentes's "less-than-sedentary" assessment appeared to be "based on his adoption of [Plaintiff's] subjective allegations."  (Tr. 22.)  Plaintiff contends that these reasons for rejecting Dr. Cifuentes's assessments are legally insufficient because they do not constitute either "clear and convincing" or "specific and legitimate" reasons for discounting the treating physician's opinions.  (Doc. 15 at 21.)

As an initial matter, as noted by the ALJ, the medical record contains the following evidence that contradicts Dr. Cifuentes's assessment that Plaintiff had a less than sedentary RFC: (1) Dr. Ottney's examination report finding Plaintiff unlimited in his ability to sit, hear, see, speak, finger, grasp, reach, stoop or crouch, and finding that Plaintiff could lift ten pounds frequently and twenty pounds occasionally (Tr. 214-217); (2) Dr. Zaveri's treatment notes consistently report that Plaintiff had normal lumber flexion and extension (Tr. 257, 263, 269-70, 376, 386, 393, 416, 429), stable lower extremities with full strength and full range of motion (Tr. 257, 263, 27, 376, 386, 392, 416, 429), and a stable gain and station (Tr. 257, 263, 376, 386, 392, 416, 429);

(3) neurologist Gregory Hunter performed and reviewed EMG and NCV electrodiagnostic tests to evaluate Plaintiff's median and ulnar motor and sensory nerves and did not impose any limitations on Plaintiff's RFC (Tr. 365-69); (4) state agency reviewing physician Maloney's assessment that Plaintiff could carry ten pounds frequently and twenty pounds occasionally, could sit or stand for about six hours in an eight hour day, was not limited in his ability to push or pull, and could frequently balance, stoop, kneel and crouch   (Tr. 239-246); and (5)  state agency reviewing physician Green's assessment that Plaintiff could occasionally carry twenty pounds and could frequently carry ten pounds, could sit or stand for about six hours in an eight-hour day, was unlimited in his ability to push or pull, and could occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl.   Because the record contained conflicting evidence, the ALJ had to provide specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Cifuentes's assessments.  *See Bayliss*, 427 F.3d at 1216; *Reddick*, 157 F.3d at 725.

### 1.    Boilerplate Rationale/ALJ Interpreted the Medical Record

Plaintiff argues that the ALJ's first reason for rejecting Dr. Cifuentes's assessment — that Dr. Cifuentes's opinion was not supported by his clinical records — fails for lack of specificity because the ALJ did not describe what was lacking from the clinical records and thus, this reason is boilerplate rationale.  (Doc. 15 at 21.)  Plaintiff further argues that the ALJ improperly interpreted the medical evidence when he found that Dr. Cifuentes's treatment notes did not support his assessments of Plaintiff.  (Doc. 15 at 22.)

When there is a conflict between the opinions of a treating physician and an examining physician, or between the opinion of a treating physician and objective evidence in the record as a whole, the ALJ may disregard the opinion of the treating physician if he sets forth "'specific and legitimate reasons supported by substantial evidence in the record for doing so.'"  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir.2001) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995)); s*ee Batson v. Comm'r of Soc. Sec.* Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (stating that an ALJ

"need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").  Although the ALJ found that Dr. Cifuentes's treatment notes did not support his conclusions or assessments, the ALJ did not identify which of Dr. Cifuentes's clinical records were inconsistent with his assessments.  (Tr. 21.)  However, any error in the ALJ's failure to identify such records was harmless because, as discussed below, the ALJ provided other legally sufficient reasons for rejecting Dr. Cifuentes's assessments and specifically discussed the other record evidence that was inconsistent with Dr. Cifuente's assessments.  (Tr. 21-22.)

In rejecting Dr. Cifuentes's January 27, 2010 assessment, the ALJ noted that it was inconsistent with the opinions of Dr. Ottney and the state agency reviewing physicians Maloney and Green.  (Tr. 19-22.)  The ALJ specifically discussed those opinions and identified the inconsistencies, which the Court discussed above in Section VI(B).  (Tr. 19-22.)  The ALJ also relied on Dr. Green's finding that Dr. Cifuentes's first assessment in January 2010 was inconsistent with the medical record and with Dr. Cifuentes's treatment notes.  (Tr. 22, 300.)  Finally, the ALJ relied on the treatment notes of Dr. Zaveri who oversaw Plaintiff's facet injections and epidural steroid injections.  (Tr. 21.)  Dr. Zaveri found that the Plaintiff made "excellent progress after the facet injections."  (Tr. 257.)

## 2.      Medical Opinion Based on Subjective Complaints

Plaintiff further argues that the ALJ erred in discounting Dr. Cifuentes's assessment because it appeared to be based mainly on Plaintiff's subjective complaints.  (Doc. 15 at 23, Tr. 22.)  Because the ALJ properly discredited Plaintiff's subjective complaints as discussed in Section VI(E)(2) below, the ALJ did not err in this regard.  See Bray, 554 F.3d at 1228 (9th Cir. 2009) (ALJ properly discounts a physician's opinion that is based solely upon claimant's self-reporting if ALJ concludes that claimant's self-reporting is not credible); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (rejecting physician's opinion in part because it was based on claimant's subjective

1    complaints, not on new objective findings); *Tonapetyan*, 242 F.3d at 1149 (medical

2    opinion premised on subjective complaints may be disregarded where record supports

3    ALJ in discounting claimant's credibility).

4         In summary, the ALJ did not err in discounting Dr. Cifuentes's assessments of

5    Plaintiff's pain and RFC and, as discussed below, the ALJ's determination is supported

6    by substantial evidence in the record.  *See Richardson*, 402 U.S. at 401 (substantial

7    evidence is "such relevant evidence as a reasonable mind might accept as adequate to

8    support a conclusion.").

9         **C.    ALJ's Reliance on Examining and Reviewing Physicians' Opinions**

10        Plaintiff also argues that the ALJ erred in relying on the opinions of examining

11   physician Ottney and reviewing state agency physicians Maloney and Green as

12   substantial evidence in support of his RFC and disability determinations.  (Doc. 15 at 25.)

13        The ALJ accorded significant weight to the opinions of Dr. Ottney and the state

14   agency reviewing physicians.  These opinions were consistent with the record evidence

15   and constituted substantial evidence upon which the ALJ could rely.  *See Tonapetyan*,

16   242 F.3d at 1149 (examining physician's "opinion alone constitutes substantial evidence,

17   because it rests on his own independent examination of" the claimant.); *Thomas*, 278 at

18   957 ("The opinions of non-treating or non-examining physicians may also serve as

19   substantial evidence when the opinions are consistent with independent clinical findings

20   or other evidence in the record.").

21        Plaintiff specifically complains that the ALJ erred in relying on Dr. Ottney's

22   opinion because she did not review Plaintiff's MRI or an x-ray of Plaintiff's

23   "lumbrosacral spine," which was ordered but unavailable at the time of Plaintiff's

24   appointment.  (Doc. 15 at 26.)  The ALJ did not err in this regard.  Dr. Ottney took a

25   history from Plaintiff and examined him.  Based on that history and examination, she

26   found that Plaintiff had low back impairments.  (Tr. 214-15.)  Because Dr. Ottney

27   apparently did not need the results of diagnostic tests to confirm Plaintiff's low back

28

1    impairments, the ALJ did not err in relying on her opinion even though it did not include

2    a discussion of diagnostic tests.

3            Plaintiff also asserts that Dr. Ottney failed to discuss Plaintiff's background

4    medical information or explain the "rated capacities."   (Doc. 15 at 26.)   Contrary to

5    Plaintiff's assertion, Dr. Ottney's report discusses the history of Plaintiff's "present

6    illness," including low back pain and a history of Type II diabetes.   (Tr. 214.)

7    Dr. Ottney's report also details Plaintiff's past medical history and treatment.  (Tr. 214-

8    15.)

9            Dr. Ottney's notes regarding her physical examination of Plaintiff support her

10   "rated capacities." (Tr. 215.)  She noted that Plaintiff's muscle strength in both the upper

11   and lower extremities and his grip was "5/5 bilaterally."  (*Id*.)  She also found that his

12   balance and coordination were normal, and that he was able to "move on and off the

13   exam table with ease."  (Tr. 215.)   Upon examination of Plaintiff's back, Dr. Ottney

14   found that Plaintiff had a normal straight leg test in the supine and sitting positions, and

15   that his lower extremities revealed no signs of "crepitus, joint instability, atrophy, or

16   deformity."  (*Id*.)  She reported a small left knee effusion and found that it could cause

17   Plaintiff "difficulty with repetitive climbing ladders and scaffolding as well as crawling."

18   (Tr. 215-16.)  In addition, Dr. Ottney reported that Plaintiff could heel to toe and tandem

19   walk, could squat without difficulty, could shift his weight to each individual foot, but

20   did not perform a hop.  (Tr. 15.)  Finally, she reported that Plaintiff had normal range of

21   motion in all of his major joints, except his lumbar flexion was limited to thirty degrees.

22   (*Id*.)  Thus, Dr. Ottney discussed Plaintiff's history and provided sufficient explanation of

23   her "rated capacities."   The ALJ did not err in relying on this report as substantial

24   evidence in support of his RFC and disability determination.

25           **D.    Determination of Plaintiff's Work Capacities**

26           Plaintiff also argues that the ALJ's assessment of Plaintiff's postural limitations

27   included in his RFC is not supported by substantial evidence in the record.  (Doc. 15 at

28   25, 27.)   Residual functional capacity is what a person "can still do despite [the

individual's] limitations."   20 C.F.R. §§ 404.1545(a), 416.945(a); *see also Valencia v. Heckler*, 751 F.2d 1082, 1085 (9th Cir.1985) (RFC reflects current "physical and mental capabilities").

Plaintiff argues that the ALJ found that Plaintiff had more postural limitations than the record evidence indicates.  The ALJ found that Plaintiff was precluded from crawling, crouching, climbing, squatting, kneeling and using his lower extremities for pushing and pulling.  (Doc. 15 at 16 comparing ALJ's functional assessments with those completed by Dr. Ottney and state agency reviewing physicians; Tr. 18.)  In contrast, Dr. Ottney and the state agency reviewing physicians found that Plaintiff could occasionally or frequently crawl, crouch, climb ramps and stairs, and kneel and that he was unlimited in his ability to push or pull with his lower extremities.  (*Id.*)

Although the ALJ's assessment of Plaintiff's postural limitations was more restrictive than those assessed by Dr. Ottney and the state agency reviewing physicians, with the exception of pushing and pulling on which Dr. Cifuentes gave no opinion, the ALJ found the same postural limitations that Dr. Cifuentes assessed in 2011.  (Tr. 373 (finding Plaintiff precluded from climbing, balancing, stooping, kneeling, crouching, and crawling).)  Thus, with the exception of the ALJ's finding that Plaintiff was precluded from pushing and pulling with his lower extremities, substantial evidence supports the ALJ's assessment of Plaintiff's postural limitations.

Even if the ALJ erred in assessing Plaintiff's postural limitations by finding him more limited in his ability to push and pull with his lower extremities than the record indicated, any error is harmless because it was in Plaintiff's favor.  Moreover, had the ALJ adopted the less-restrictive postural limitations suggested by the examining and non-examining physicians, the vocational expert likely would have found Plaintiff capable of performing at least the same jobs that he cited.  (Tr. 52.)  Thus, any error would not change the outcome in this case and remand is not warranted.

Plaintiff further argues that the ALJ erred in finding Plaintiff limited to "unskilled work," even though the record did not include any evidence that would justify such a

1  limitation.  (Doc. 15 at 28.)  Again, any error in this regard was in Plaintiff's favor and

2  does not warrant remand.

3        **E.**     **Credibility of Plaintiff's Reported Pain and Symptoms**

4              **1.**     **The Two-Step Analysis**

5        An ALJ engages in a two-step analysis to determine whether a claimant's

6  testimony regarding subjective pain or symptoms is credible.  *Lingenfelter v. Astrue*, 504

7  F.3d 1028, 1035B36 (9th Cir. 2007).  "First, the ALJ must determine whether the

8  claimant has presented objective medical evidence of an underlying impairment 'which

9  could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at

10  1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The

11  claimant is not required to show objective medical evidence of the pain itself or of a

12  causal relationship between the impairment and the symptom.  *Smolen*, 80 F.3d at 1282.

13  Instead, the claimant must only show that an objectively verifiable impairment "could

14  reasonably be expected" to produce his pain.  *Lingenfelter*, 504 F.3d at 1036 (quoting

15  *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d at 1160-

16  61 (9th Cir. 2008) ("requiring that the medical impairment could reasonably be expected

17  to produce pain or another symptom . . . requires only that the causal relationship be a

18  reasonable inference, not a medically proven phenomenon").

19        If a claimant shows that he suffers from an underlying medical impairment that

20  could reasonably be expected to produce his pain or other symptoms, the ALJ must

21  "evaluate the intensity and persistence of [the] symptoms" to determine how the

22  symptoms, including pain, limit the claimant's ability to work.  *See* 20

23  C.F.R. § 404.1529(c)(1).  In making this evaluation, the ALJ may consider the objective

24  medical evidence, the claimant's daily activities, the location, duration, frequency, and

25  intensity of the claimant's pain or other symptoms, precipitating and aggravating factors,

26  medication taken, and treatments for relief of pain or other symptoms.  *See* 20

27  C.F.R. § 404.1529(c); *Bunnell*, 947 F.2d at 346.

28

1    At this second evaluative step, the ALJ may reject a claimant's testimony

2    regarding the severity of his symptoms only if the ALJ "makes a finding of malingering

3    based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins v. Soc.*

4    *Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and

5    convincing reasons" for finding the claimant not credible.  *Carmickle*, 533 F.3d at 1160

6    (quoting *Lingenfelter*, 504 F.3d at 1036).  Ordinary credibility factors, such as prior

7    inconsistent statements concerning symptoms, other testimony that appears less than

8    candid, the claimant's reputation for lying, inadequately explained failure to follow a

9    prescribed course of treatment, and the claimant's daily activities, are reasons to find the

10   testimony about the severity of the symptoms not credible, even when there is medical

11   evidence establishing a basis for some degree of the symptomology.  *Smolen v. Chater*,

12   80 F.3d 1273, 1284 (9th Cir. 1996).

13   Relying on the Ninth Circuit decision in *Bunnell*, the Commissioner initially

14   argues that an ALJ need not provide "clear and convincing" reasons for discrediting a

15   claimant's testimony regarding subjective symptoms, and instead must make findings

16   that are "'supported by the record' and 'sufficiently specific to allow a reviewing court to

17   conclude the adjudicator rejected the claimant's testimony on permissible grounds.'"

18   (Doc. 18 at 9 (citing *Bunnell*, 947 F.2d at 345-46).)  In *Bunnell*, the court did not apply

19   the "clear and convincing" standard, and the Commissioner argues that because no

20   subsequent en banc court has overturned *Bunnell*, its standard remains the law of the

21   Ninth Circuit.  (Doc. 18 at 8-9.)  Although the Ninth Circuit has not overturned *Bunnell*,

22   subsequent cases have elaborated on its holding and have accepted the clear and

23   convincing standard.  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234

24   (9th Cir. 2011); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter*, 504

25   F.3d at 1036; *Reddick*, 157 F.3d at 722; *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.

26   1989).  Accordingly, the Court will determine whether the ALJ provided clear and

27   convincing reasons for discounting Plaintiff's credibility.

28

1                  **2.      Plaintiff's Pain and Symptom Testimony**

2           At the beginning of his discussion of Plaintiff's RFC, the ALJ rejected Plaintiff's

3    statement that he was "unable to work due to his impairments, limitations, and

4    symptoms," explaining that "the medical evidence does not support his allegation, which

5    diminishes his credibility." (Tr. 18.)  The ALJ specifically rejected Plaintiff's testimony

6    that he "had to lay down for about 6 hours in an 8-hour workday," "that he can stand 1

7    hour in an 8-hour workday," and that he "can sit 40 minutes" in an eight hour workday.

8    (Tr. 18.)  At the conclusion of the section of the ALJ's decision discussing Plaintiff's

9    RFC, the ALJ stated that Plaintiff's "medically determinable impairments could

10   reasonably be expected to cause only some of the symptoms alleged," and he further

11   stated that Plaintiff's "statements concerning the intensity, persistence and limiting

12   effects of [his] symptoms are not credible to the extent that they are inconsistent with the

13   residual functional capacity assessment determined by the undersigned."[3]   (Tr. 23.)

14   Plaintiff argues that the ALJ did not give clear and convincing reasons for discrediting his

15   symptom testimony.

16                          **a.      Circular Reasoning**

17          Plaintiff first argues that the ALJ's conclusion that Plaintiff's testimony was not

18   credible to the extent that it was inconsistent with the ALJ's RFC assessment is improper

19   circular reasoning because the ALJ was supposed to take into account the limiting effects

20   of Plaintiff's symptoms in formulating his RFC, not determine Plaintiff's RFC and then

21   reject any symptom testimony that was not consistent with that RFC.  *See Leitheiser v.*

22   *Astrue*, 2012 WL 967647 at *9 (D. Or. Mar. 16, 2012) ("Dismissing a claimant's

23   credibility because it is inconsistent with a conclusion that must itself address the

24   claimant's credibility is circular reasoning and is not sustained by this court"); *Hale v.*

25   *Astrue*, 2011WL 6965856, at *4 (D. Or. Nov. 30, 2011) ("Dismissing a claimant's

26

27   _____

28          [3]  Although these two statements appear in different parts of the ALJ's discussion,
     both statements are part of the ALJ's credibility determination.

                                          - 18 -

1    credibility because it is inconsistent with a conclusion that must itself address the

2    claimant's credibility is improper circular reasoning").

3        Although the statement at the conclusion of the ALJ's RFC discussion contains

4    what could be considered improper circular reasoning if that statement were considered

5    in isolation, the record reflects that before the ALJ made that statement, he identified the

6    portions of Plaintiff's testimony that he deemed not credible.  *Cf Spiva v*. Astrue, 628

7    F.3d 346, 348 (7th Cir. 2010) (denouncing the way in which ALJ's "routinely state (with

8    some variations in wording) that . . . 'the claimant's statements concerning the intensity,

9    persistence and limiting effects of these symptoms are not entirely credible,' yet fail to

10   indicate which statements are not credible and what exactly 'not entirely' is meant to

11   signify[.]") (citing *Parker v. Astrue,* 597 F.3d 920 (7th Cir. 2010)).  Specifically, the ALJ

12   rejected Plaintiff's testimony that he needed to lay down six hours out of the day and that

13   he had limited ability to stand and sit.  In other words, the ALJ considered the limiting

14   effects of Plaintiff's symptoms before formulating Plaintiff's RFC, and the ALJ identified

15   Plaintiff's statements that he discredited.  The ALJ's challenged statement appears to be a

16   summary rather than an unsupported conclusion.  Moreover, even if the ALJ erred in

17   relying on circular reasoning to discredit Plaintiff's credibility, any error was harmless

18   because, as discussed below, he provided other clear and convincing reason for

19   discrediting Plaintiff's symptom testimony.

20              **b.    Other Grounds for Discrediting Plaintiff's Testimony**

21        The ALJ gave the following additional reasons for finding Plaintiff not entirely

22   credible: (1) Plaintiff's testimony about his need to lay down most of the day and his

23   limited ability to sit and stand was inconsistent with Dr. Cifuentes's 2011 assessment;

24   (2) Plaintiff's complaints were inconsistent with Dr. Ottney's assessment; and

25   (3) Plaintiff's complaints were inconsistent with his reports of significant pain relief with

26   epidural injections.  (Tr. 18-19, 21-22.)

27        As part of the overall disability analysis, the ALJ must consider whether there are

28   any inconsistencies in the evidence.  *See* 20 C.F.R. § 404.1529(c)(4) (stating that an ALJ

must consider "whether there are any inconsistencies in the evidence.")  "Contradiction with the medical record is a sufficient basis for rejecting [a] claimant's subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citation omitted) (finding that ALJ properly rejected claimant's testimony that he could only lift ten pounds occasionally in favor of doctor's contradictory opinion that he could lift up the ten pounds frequently).

Plaintiff testified that he had to lie down for six hours in an eight hour day, that he could stand for one hour in an eight-hour day, and that he could sit for forty minutes in an eight-hour day.  This testimony was contradictory to the January 3, 2011 assessment of Plaintiff's treating physician Dr. Cifuentes who found that Plaintiff could sit for "about 6 hours in an 8 hour work day" and that he need to alternated sitting and standing every hour.  (Tr. 372-73.)  This testimony was also contradictory to Dr. Ottney's findings that Plaintiff's medical history would not limit his ability to sit.  (Tr. 215.)  Furthermore, this testimony was inconsistent with Plaintiff's reports of significant pain relief with epidural injections.  (Tr. 376, 386, 393, 400, 409.)

The ALJ properly considered inconsistencies between Plaintiff's statements and the medical record when assessing his credibility.  *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding credibility determination where ALJ noted that claimant's statements at the hearing were inconsistent with the objective evidence in the medical record).  The ALJ gave clear and convincing reasons for rejecting Plaintiff's symptom testimony that are supported by substantial evidence in the record.

**VII.   Conclusion**

The ALJ did not commit legal error in discounting Plaintiff's testimony regarding the severity of his symptoms, assigning weight to the opinions of Dr. Cifuentes Dr. Ottney, and the state agency examining physicians, or in assessing Plaintiff's RFC. Additionally, the record contains substantial evidence in support of the ALJ's determination that Plaintiff was not disabled.

1     Accordingly,

2     **IT IS ORDERED** that the Commissioner's decision denying Plaintiff benefits

3 in this case is **AFFIRMED**.  The Clerk of Court is directed to enter judgment in favor of

4 the Commissioner and against Plaintiff and to terminate this action.

5     Dated this 4th day of December, 2013.

6

7

8                                                  _____

9                                                    Bridget S. Bade

10                                  United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28